## The Camden and Amboy Rail Road and Transportation Company vs. Belknap.

*Common carriers*, who carry *passengers* and their *baggage* as well as *merchandize*, are answerable under their *common law liability* for the *baggage* of passengers left at their offices in charge of their agents, with the intention of proceeding with the same in the next train of cars, steam boats or other conveyances departing from the place where the baggage is deposited.

A notice of " all baggage at the risk of the owners" is no protection to common carriers.

A *general exception* to a charge delivered to the jury, does not bring up any particular remark made by the judge, or any omission in such charge, unless the attention of the judge was directed to the point at the time. All that will be done on such an exception is, that the general bearing of the charge will be examined, and if that is not plainly injurious, or if in any legal mode of putting the matter the verdict must necessarily be the same, a new trial will not be granted, although the charge may in some particulars be erroneous.

ERROR from the superior court of the city of New York. *Belknap* brought an action on the case in the court below against the company, as common carriers between New York and Philadelphia, for the loss of his baggage, being a trunk and its contents, of the value of $300.. The defendants pleaded not guilty. On the trial before *Ch. J. Jones,* it appeared that the company had two offices in the city of New York, the one at number 12, and the other at number 14, Washington street. In August, 1833, the plaintiff with his family arrived in the city of New York, in the steam boat from Hartford, Connecticut, between twelve and one o'clock in the day, on their way to Wilmington in the state of Delaware. The plaintiff immediately proceeded to the office (No. 12) of the company, for the purpose of taking passage that afternoon for Philadelphia by the way of Trenton, but was told by *Bliven,* a *clerk* and *porter* in the office, that he could not go that afternoon—that no boat left to go by the way of Trenton until the next morning at six o'clock. The plaintiff, intending to go in the next morning line, asked Bliven if his baggage, consisting of three trunks, would be safe in the office, and Bliven replied that it would—that he would put it under lock and key. The plaintiff requested Bliven to do so, and left the trunks in the office. About three o'clock in the afternoon of the same day the plaintiff returned to the office and found the trunks standing where he had left them, when he complained that they had not been locked up, and Bliven replied that he had been busy, but he would do it immediately. In the evening the plaintiff went again to the office and found two of the trunks where he had left them—neither of them having been locked up—the third trunk was missing. Bliven could give no account of this trunk, but said he supposed it had been taken away by mistake. The plaintiff then took away the two remaining trunks, and afterwards pursued his journey by another line of conveyance. There was a closet in the office where it was usual to lock up baggage. Bliven, who was sworn for the defendants, had no recollection of having seen the plaintiff until in the evening, when it was discovered that one of the trunks was lost. He said they were in

the habit of locking up baggage in the lock up room whenever any body requested it; that he always considered himself bound to do so when requested; that both deck and cabin passengers were in the habit of putting their baggage in that office.. He was satisfied that he did not undertake to lock up the plaintiff's baggage: but in that he was clearly mistaken, as was fully proved by two witnesses. *Wyall*, a public porter, testified that he had frequently carried baggage to the office No. 12, where it was received and locked up— that there is always a man at the office to receive baggage, who locks it up—that they are in the habit of locking it up.

*Ira Bliss*, a witness for the defendants, testified that he was the agent of the company in the city of New York: that the office at No. 12 is only for the accommodation of passengers while waiting for the boats, and the other is the transportation office, where goods are booked, freight paid and receipts given. That there is a.closet in No. 12 for the convenience of passengers, where their baggage is locked up if they require it; that Bliven is at the office the principal part of the time, and has charge of the baggage; he makes entries at the office and receives the *fare* from the *deck passengers*, but not from the *cabin passengers*, who pay on board; that he has no power to make contracts of any kind. The witness said that he and all the agents of the company have express orders to make no contracts in relation to baggage; that a notification in large characters, " *all baggage at the risk of the owners*," has at all times been fixed up in the of· fice and on board the boats, and has been inserted in all the company's notices in the public papers; that the agents have no power to bind the company for baggage in opposition to the notice; that the passengers have free access to the baggage and full control over it in the office—it is delivered to them whenever they ask for it—that when brought to the boat the baggage is put in a crate, and the passengers still have free access to it.

Tne defendants moved for a nonsuit on the ground, 1. that this was a contract for a deposit which the company could not make by their charter; 2. that they could make no such

Camden, &c. Transportation Co. v. Belknap.

contract for a deposit out of the state of New Jersey; 3. that the plaintiff was bound to prove that Bliven was the authorized agent of the company to make such contract; and 4. that if Bilven could make such contract to bind the company, the contract as proved was *nudum pactum*, and the loss complained of proceeding from *nonfeazance*, the action could not be sustained. The chief justice overruled the motion and charged the jury as follows—" that the defendants, as *common carriers*, if they received the plaintiff's trunks as the baggage of a passenger to be carried with him by their line, would, on common law principles, be answerable for the loss of the missing trunk; but that the *notice limiting their liability*, if it reached the plaintiff or came to his knowledge, controlled the common law rule, and protected them from responsibility, *unless* assumed by them to the plaintiff by contract, *or unless* usage and the permitted course of business and the practice of their office has been such as to establish that office in the consideration and belief of passengers and others having intercourse and dealings with it, and with the agents and servants of the defendants conducting it, as a place of deposit for the reception of the baggage of persons intending to take passage by their line, in the absence of the boat and until her arrival, and they, the defendants were chargeable on that ground with the custody of the trunk and liable for its loss. That proof of the actual personal knowledge by the passenger of the notice limiting the defendants' common law liability was not indispensably necessary; the circumstantial evidence might be such as to supersede the necessity of positive proof; but that the circumstances must be so strong and conclusive as to satisfy the jury, and leave no doubt on their minds that there was no positive proof of knowledge by this plaintiff of the notice, but that there was strong circumstantial evidence, and it was for the jury to judge of its sufficiency to satisfy them; that if they believed from the evidence before them that the notice was known to the plaintiff, then the defendants would be protected by it from their liability as carriers further than would be afterwards stated to them; otherwise they would be under their full common law liability.

That if the jury should be of opinion that the plaintiff was apprised of the defendants' notice limiting their liability, the next inquiry for them would be, whether the defendants, notwithstanding their protection under that notice, have made themselves responsible for the loss by an express undertaking for the safe keeping of the trunks, or by any implied engagement or obligation, created by or resulting from the course of their business as carriers, and the character they have allowed to be stamped upon their office as a receiving office or place of deposit for the baggage of passengers to go by their line. That the plaintiff insisted that the defendants were bound by the special contract of their agent to take charge of his trunks and safely keep them, and if the plaintiff's witnesses were to be believed, the agent did, though he denies it, enter into such an engagement with the plaintiff. But there was no sufficient proof of his authority to make such a contract for the principals ; that on the contrary, in the view taken by the court of the evidence, he was not only not authorized, but expressly forbidden by his employers to enter into any such engagement; and his employment as an agent in that office by the defendants did not appear to the court to impart to him that authority. Such an agreement by him with the plaintiff, therefore, if made by him, did not appear to the court to be binding upon the defendants. The question consequently arose, whether the defendants, by the permitted course of their business as carriers, and the mode of conducting it by the agents at the office in question, had impressed upon that office the character of an office established or kept by them for the reception of the baggage of passengers intending to go by their line, to be kept by them until it could be taken on board the boat? and if this question is answered in the affirmative, then whether they were guilty of *such negligence* in the duty which devolved upon them in the premises as to render them liable for the loss. That it was in evidence that the agents and servants of the defendants did receive the baggage of passengers at that office in the absence of the boat, and when required did put the same in the inner closet and lock it up, without any notice, explanation or admonition at the time

that the same was to be otherwise or to any greater extent at the risk of the owners than it would be if on board the boat; and if the usage and practice of passengers to deposit, and of the defendants' agents and servants to receive and keep baggage intended for transportation with the passengers by their line, had been so general, uniform and long continued, as to cause that office to be considered and regarded as the receiving office or place of deposit established or kept by the direction or with the knowledge of the defendants, for the reception of the baggage of passengers intending to go by their line, and applying for passage in the absence of the boat, to be kept by the defendants' agent and servant, and locked up in the inner closet if required, until it could be put on board the boat; and that passengers acting upon this usage and the presumption and understanding on their part that the baggage so left was to be in the charge of the defendants; and if the jury should also be of opinion that the neglect to place the baggage of the plaintiff in the inner closet and to lock it up, as the agent was requested to do by the plaintiff, and leaving it in an exposed situation in the outer office, was gross negligence in the agents or servants of the defendants, then they should find their verdict for the plaintiff, otherwise for the defendants." The counsel for the defendants excepted to this charge, and the jury found a verdict for the plaintiff with $300 damages. Judgment having been entered upon the verdict the defendants sued out a writ of error.

*J. Anthon*, for the plaintiff in error.

*S. P. Staples*, for the defendant in error.

*By the Court*, BRONSON, J.   When the judge's charge is not confined to a brief statement of the points of law, but extends to a review of the whole case, any particular remark which may be deemed exceptionable should be pointed out at the time.   The judge will thus have the opportunity of explaining, qualifying or correcting what he has said; and if he refuse to do so, the party will then have a pointed

exception, upon which his right to a review cannot be ques-
tioned. So too, where the judge lays down a number of
legal propositions for the guidance of the jury, some of which
are deemed objectionable, the party should specify at the
time to which point in particular his exception is intended
to apply. And where any matter of law which the party
may think applicable to the case, has been omitted in the
charge, the attention of the judge should be called to that
fact, and he should be requested to give the particular in-
struction to the jury. Until this has been done the party
has no just ground for complaint. And clearly, a general
exception to the charge delivered, cannot raise any question
about a mere omission to say something more, which was
not mentioned on the trial.

These remarks will dispose of many of the objections
which have been urged against this judgment. The single,
general exception which was taken to the charge by the
defendants below, cannot authorize a critical review of every
particular remark which fell from the judge; nor will it war-
rant us in reversing the judgment because we may think that
something was omitted, which might very properly have
been included in the instructions to the jury. The most we
can do on such an exception, is, to examine the general
bearing of the charge, and if that is not plainly injurious to
the party in some matter of law, the judgment must be af-
firmed.

I. But if the particular objections which have been urged
in the argument had been taken on the trial, I should not
think it necessary to inquire whether every part of the charge
is in harmony with all the rest, and with the law of the land.
This case does not call for such a review; for on the facts
proved, and about which there was no controversy on the
trial, the plaintiff below was, I think, clearly entitled to the
judgment which has been rendered in his favor. Should it
be conceded that the charge was in some points erroneous,
still, if in any legal mode of putting the matter the verdict
must necessarily have been the same, the judgment ought
not to be reversed.

The notice which the defendants had given that they
would not be answerable for baggage, was of no legal im-

Camden, &c. Transportation Co. v. Belknap.

portance, and must therefore be laid out of the case. *Hollister* v. *Nowlen*, and *Cole* v. *Goodwin*, 19 Wendell, 234, and 251. We may also disregard all that was said about an express contract for the safe keeping of the baggage, and about the authority of *Bliven*, or any other agent of the company to make such a contract. The facts which remain, and about which there was not a particle of controversy, on the trial, are, that the defendants were common carriers between New York and Philadelphia, and that they carried passengers and their baggage, as well as merchandize. In conducting this business, the defendants, either for profit or convenience, or both, kept two officers in the city of New York; in one of which, (at No. 12 Washington street,) they were in the habit of receiving, and if requested, locking up the baggage of persons intending to take passage in the next boat that should depart. The plaintiff, intending to proceed on his journey by the next boat, delivered his baggage at this office, where it was received by Bliven, the defendants' servant or agent, with full knowledge of the purpose for which it was delivered. Now, I think it quite clear upon this statement, that the plaintiff's trunks were in the possession of the defendants, *as common carriers*, and that they were answerable, in that character, for the safe keeping of the property. The trunk was lost before the departure of the next boat. On these facts, and independent of any other contract, express or implied, for the safe keeping of the property, and without regard to any question of negligence, the judge would have been well warranted in instructing the jury that the plaintiff was entitled to their verdict. The defendants had the property in their possession as common carriers, and were answerable at all events for the loss, unless it was occasioned by the act of God, public enemies, or the fraud of the owner—neither of which was pretended.

The case was tried before we had formally refused to engraft upon our code the modern English innovation of allowing the carrier to limit his common law liability, by a notice brought home to the employer. Following the rule which for a time prevailed in Westminster Hall, the learn-

ed judge instructed the jury, that the notice which the defendants had given, if it came to the plaintiff's knowledge, would protect the defendants from responsibility as common carriers. The judge was then led to inquire whether the defendants had not by contract, either express or implied, made themselves responsible for the safe keeping of the baggage *in the office, as a place of deposit.* There may, perhaps, be some difficulty in maintaining this part of the charge, if we assume that the judge was right at the outset on the doctrine of notice. But if we commence with the common law rule of liability, the residue of the charge is of no importance. Whether right or wrong, *in the abstract,* no injury has been done to the defendants.

Judgment affirmed.