HENRY E. ROBINSON, Respondent, *v.* S. CHITTENDEN et al., Appellants.

The general owner of a vessel who has given to another a charter for a voyage, but who retains control, equips, mans, victuals and sails her at his own expense, is owner for the voyage ; and is liable for the safe carriage and proper delivery of goods received on board by the master, although so received under the contract by the owner with the charterer, and although the master has given no bill of lading.

Where, however, by the charter party, the charterer is entitled to the benefit of the whole stowage capacity of the vessel, and the owner of the goods delivers them to the charterer, from whom the master receives them, and there is nothing to notify the latter, or to charge him with knowledge or put him on inquiry as to the ownership, or that they are to be delivered in any other or different way than the balance of the cargo, the owner of the vessel has the right to make delivery at the port of destination to the consignee of the charterer, and, upon such delivery, he is absolved from further liability.

The fact that the goods were, by inadvertence, not entered upon the vessel's papers, does not affect such liability ; nor does the fact that the owner of the goods delivered to his own agent the receipt received from the charterer, and that that agent called for delivery of the goods ; in the absence of evidence that such agent made known to the master who was the owner of the goods, and that such agent was specially authorized to receive them.

The clerk of the consignee, who oversees the discharge of the cargo, is not to be considered the clerk of the owner of the vessel, and notice to him is not notice to the owner.

*Parish* v. *Crawford* (2 Strange), 1251; *The Peytona,* (1 War.) [2d ed.], 542; (2 Curtis C. C.), 21; *Bradley* v. *Dunniface* [1 Exch.] (7 H. & N.), 200; S. C. (1 H. & C.), 521; *Kiender* v. *Wolcott* (1 Hilt.), 223, distinguished.

*Robinson* v. *Chittenden* (7 Hun, 133) reversed; but not on points discussed in court below.

(Argued April 13, 1877; decided May 22, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order denying a motion for a new trial, and directing judgment on a verdict. (Reported below, 7 Hun, 133.)

This action was brought against defendants as owners of the ship Great Republic to recover the value of a trunk and its contents, shipped on board of said vessel at San Francisco to be transported to New York.

The ship had been chartered for the voyage from San Francisco to New York by the firm of Moore & Co., of San Francisco; to be victualled, manned and sailed at the expense of the owners, in whose employ were the captain, officers and men.

The trunk was delivered to the freight clerk of Moore & Co., who gave a receipt therefor; no bill of lading was applied for or received by plaintiff. The only marks upon the trunk were the initials, "H. E. R." It was not entered upon the ship's manifest. No advice or instructions appear to have been given to any one connected with the ship as to its ownership, or to whom it was consigned. The ship arrived safely at New York, and the trunk, with the other cargo, was delivered to the consignees of the charterers. Plaintiff delivered his receipt to Wells, Fargo & Co., in New York. A clerk of their's presented it to the consignees, who referred him to their delivery clerk. The latter, not finding it entered on the ship's manifest, took the marks and agreed to notify the person calling for it when it came out of the ship. It was

subsequently taken out and delivered to the consignees of the cargo. The court directed a verdict for plaintiff. Exceptions were ordered to be heard at first instance at General Term.

Further facts appear in the opinion.

*Rob't D. Benedict*, for the appellants. The charter was the only agreement between plaintiff and defendants, and the rights of the latter would be determined by that alone. (*Cook* v. *N. Y. F. Dry Dock Co.*, 1 Hilt., 443; *Winterbottom* v. *Wright*, 10 M. & W., 109; Aug. on Car., § 422; *Walter* v. *Bennett*, 16 N. Y., 250; *Ransom* v. *Wetmore*, 39 Barb., 106.) No contract between plaintiff and defendant can be implied from the fact that the charterers put the trunk on the ship. (*Calkins* v. *Falk*, 39 Barb., 620; *Campbell* v. *Perkins*, 8 N. Y., 432.) Defendants were not common carriers. (*Gage* v. *Tirrell*, 9 Al., 299; *Lamb* v. *Parkman*, Sprague, 343; 1 Pars. on Ship., 294, 246; *Tuckerman* v. *Brown*, 17 Barb., 191 ; 2 Kent., 598.) Defendants having performed their whole duty as to the trunk, were not liable. (*Fenner* v. *B. & S. L. R. R. Co.*, 44 N. Y., 510; *Northrop* v. *Syr. & N. Y. R. R. Co.*, 2 Tr. App., 183; *Petton* v. *R. & S. R. R. Co.*, 54 N. Y., 214, 217; *Gould* v. *Chapin*, 10 Barb., 618; *Stephenson* v. *Hart*, 4 Bing., 476; 1 Pars. Mar. Law, 154, note 5; *Cope* v. *Cordova*, 1 Rawle, 203; *The Tangier*, 11 L. R. [N. S.], 12; Aug. on Car., §§ 313, 295; *Fisk* v. *Newton*, 1 Den., 45; *Mayell* v. *Potter*, 2 J. Cas., 371; *Williams* v. *Nichols*, 13 Wend., 58; *Whitbeck* v. *Holland*, 45 N. Y., 13; *Zinn* v. *N. J. Stbt. Co.*, 49 id., 445; *Chickering* v. *Fowler*, 4 Pick., 371; *Pickett* v. *Downer*, 4 Vt., 21.) No liability on the part of defendants could be based on the alleged agreement of the delivery clerk to notify Welch when the trunk came out. (*Cook* v. *N. Y. C. R. R. Co.*, 3 Keyes, 476; 11 L. R. [N. S.], 13; *Berger* v. *Miller*, 4 Wash., 280; *G. I. Ins. Co.* v. *Ruggles*, 12 Wheat., 408; *N. Y. L. Ins. & T. Co.* v. *Beebe*, 7 N. Y., 364; *Prisbane* v. *Adams*, 3 id., 129; *Mortimer* v. *Cornwell*, Hoffm., 351.)

*H. F. Hatch*, for the respondent.    Defendants were liable as carriers.    (*Mactaggart* v. *Henry*, 3 E. D. S., 398; *Camden R. R. & T. Co.* v. *Belknap*, 21 Wend., 354; *Schroeder* v. *H. R. R. R. Co.*, 5 Duer, 55; *Grosvenor* v. *N. Y. C. R. R. Co.*, 39 N. Y., 34; *Langworthy* v. *N. Y. & H. R. R. Co.*, 2 E. D. S., 196; *Clarkson* v. *Edes*, 4 Cow., 470; *Campbell* v. *Henry*, 8 N. Y., 430; 1 H. Bl., 359; *Brown* v. *The Water Witch*, 19 How. Pr., 241; Act of Congress, Mch. 3, 1851, § 53; *Parish* v. *Crawford*, 2 Str. 1251; *Marcardier* v. *Ches. Ins. Co.*, 8 Cranch, 49; *McIntyre* v. *Bowne*, 1 J. R., 229.) Defendants were bound, by the receipt of the freight clerk, when the trunk was delivered. (*Goddard* v. *Mallory*, 52 Barb., 87; 5 Duer, 55; *Rawls* v. *Seymour*, 3 Keyes, 577.) They were bound to deliver the trunk on its arrival, or to notify plaintiff. (*De Mott* v. *Laraway*, 14 Wend., 225; *Gibson* v. *Culver*, 17 id., 305; *Price* v. *Powell*, 3 N. Y., 322; *Fenner* v. *B & S. L. R. R. Co.*, 44 id., 505; *Owners, etc.*, v. *Ayers*, 5 Am. L. Reg. [N. S.], 692; *Tangier*, 11 L. R. [N. S.], 12; *Fisk* v. *Newton*, 1 Den., 45; *McAndrew* v. *Whitlock*, 52 N. Y., 46; *Bk. of N. S.* v. *Davis*, 2 Hill, 451; *McCotter* v. *Hooper*, 8 N. Y., 497.)

FOLGER, J.    It appears from the testimony that Moore & Co., of San Francisco, were charterers of the ship of the defendants, for the voyage from that port to New York city. They had nothing to do with the victualling, manning or sailing of the ship on that voyage.    Such is the testimony of one of them, and it is not contradicted.    We may take it as established, that the defendants, as owners of the vessel, equipped, manned and victualled her, and that she was sailed for the voyage at their expense, by the master, officers and seamen, appointed, hired and paid by them.

In such case the general owner is the owner for the voyage, notwithstanding the charter party; and he retains the possession and management of the vessel during the voyage. (*The Volunteer*, 1 Sumn., 551; *Palmer* v. *Gracie*, 4 Wash. C. C. R., 116; S. C., 8 Wheat., 605; *Colvin* v. *Newberry*, 8

B. & C., 166; S. C. on appeal, 1 Cl. & F., 283; *Certain Logs of Mahogany*, 2 Sumn., 589.) There follow from this several important results. He has a lien upon the goods carried, whosesoever they are, for the charge of carriage. (See cases last cited.) He is answerable for the conduct of the master, officers and seamen of his vessel, and is justly held liable to make compensation for their misconduct. (4 Wash., *supra*.) By the general maritime law, this is expressed in the phrase : " The ship is bound to the merchandise, and the merchandise to the ship." (Abbott on Shipping, pt. 2, ch. 2, § 5, p. *117; Flanders on Shipping, ch. IV, § 204, p. 154.) The goods of third parties, shippers under the charterers, are charged with the freight thereon, though not to exceed the amount agreed upon with the charterers. (*Paul* v. *Birch*, 2 Atk., 621; *Christie* v. *Lewis*, 2 Brod. & Bing., 410; *Small* v. *Moates*, 9 Bing., 574; *Faith* v. *E. J. Co.*, 4 B. & Ald., 638; see, also, 3 Am. Jur., 26; 6 id., 4.) And where third parties ship goods by the vessel on that voyage, the general owner is liable for the property shipped for which the master has given a bill of lading, notwithstanding a charter has been given to another person. (*Parish* v. *Crawford*, 2 Strange, 1251 [1745]; more fully reported in Abbott on Shipping, p. *22, pt. 1, ch. 1, § 16.) In that case it appears that the master of the vessel signed a bill of lading of the goods of the third party. It does not seem that stress was laid on this fact, but it is said that the freight the owner had from the charterer was sufficient, and that the charterer had the use of the ship, but no ownership. It appears from the report in Abbott on Shipping, that the charterer received on board the goods of the third person, and received the freight for the carriage of them, which accords in the first of these facts with the case in hand. The liability of the general owner is put in that case on two grounds : " 1st. The benefit arising from (to ?) the ship, which is the equitable motive ; 2d. The having the direction of the persons who navigate it." The doctrine of that case is varied from in *James* v. *Jones* (3 Esp., 27 [1799]), decided

by Lord Kenyon, at *Nisi Prius*; as is noted in Abbott on Shipping. It has been sometimes thought not in entire accord with *Vallejo* v. *Wheeler* Cowp., 143; as to which, however, see per Abbott, Ch. J., in *Saville* v. *Campion* (4 B. & Ald., 688); and per Lord Ellenborough, Ch. J., in *Trinity House* v. *Clark* (4 M. &.S., 288), where he says : "The reasoning in *Vallejo* v. *Wheeler* must be applied to the question agitated in it, viz., against whom barratry may be committed;" and, also,.see comments upon it throughout the opinions in *Christie* v. *Lewis* (*supra*).. Moreover, the reason given by Lord .Kenyon is not sustained by the settled law of the relation of a general owner to a charterer, in a case where the former retains the possession and control of the ship. That reason is, that the charterers for that voyage were to be deemed the owners, and the captain as their agent *pro hac vice*. The report in Espinasse is meager. It may be that the terms of the charter party, if stated, would have shown a material difference in the facts of the two cases. Indeed, in 1 Phillips on Ins., p. 622, § 1083, note 2, it is said in citing the case, that "a charterer *having absolute control*" is liable to a shipper. (See, also, Addison on Contract, 720, to the same effect; see, also, *Sandemann* v. *Scarr*, 2 L. R. Q. B., \*86–\*92.) I am aware that in *Hutton* v. *Bragg* (7 Taunt., 414 [1816].) it is said, that *Parish* v. *Crawford* had been overruled. A reference to the cases cited for that assertion, shows no profession of a purpose so to do. One of them is *James* v *Jones* (*supra*), where *Parish* v. *Crawford* is not named. Another is *Mackenzie* v. *Rowe* (2 Camp., 482), of which the same is to be said. Another is *Frazer* v *Marsh* (13 East, 238, and 2 Campb., 517). In 2 Campb. it is not named. The facts, in 13 East, showed that the general owner, in the language of the court, had "divested himself by the charter party of all .control and possession of the vessel," and "had no right to appoint the captain." That made quite a. different case. Moreover, *Hutton* v. *Bragg* has itself been questioned if not repudiated. (See *Christie* v. *Lewis* [*supra*] ; *Saville* v. *Campion* [*supra*] ;

see, also, *Sandemann* v. *Scarr* [*supra*].)    There is no doubt, from the authorities above cited to the point, that in such a case as that in hand, the general owner retains the possession and management of the ship, and that the master is his agent, with power to bind the owner by acts within the scope of his delegated authority.    And then there comes in a principle that, if a person accepts any thing which he knows to be subject to a charge or duty, it is rational to conclude that he meant to take the charge or duty upon himself; and the law may very well imply a promise to perform what he has so taken upon himself.    (Broom's Leg. Max., 677, 680.)

Nor does it matter that the master does not, in a particular case, give a bill of lading of the goods, or that no other express agreement is made.    If he receives the goods on board, he subjects the vessel to the liability of a common carrier.    (*Brower* v. *The Water Witch*, 19 How. P. R., 241; in U. S. Circuit Court, *per* NELSON, J.)    The vessel is bound by the agreement of the charterers.    It carries with it, by implication, the usual liabilities of common carriers. (Id.)    It is indeed said, in *Boucher* v. *Lawson* (Rep. *temp.* Hardwicke, 188, 189), that the owner must be charged upon the custom of the realm as usually carrying for hire, or upon his special undertaking.    If this should be conceded to be the case, in view of *Brower* v. *The Water Witch* (*supra*); to meet the exigency of it, there is the averment in the complaint in this case, that the ship of the defendant was then engaged in the carriage of passengers and freight from San Francisco to New York, and that allegation is admitted by answer. It is averred, and the proof establishes it, that the goods of the plaintiff went into the possession of the master of the ship for carriage from one port to the other.    This showed them in the possession of the defendants as carriers, and made them answerable for them.    (*Camden, etc., Trans. Co.* v. *Belknap*, 21 Wend., 354–61; *Campbell* v. *Perkins*, 8 N. Y., 430.)

We are thus brought to the conclusion that the defend-

ants, as owners of the ship, were answerable to the plaintiff for the safe carriage and proper delivery of his trunk and contents from San Francisco to and at New York city.

The case shows that they did carry it safely, and did make a delivery of it, in fact, at the port of New York. That delivery was to the consignees of the charterers of the vessel, and not to the plaintiff, nor to the agents ultimately appointed by him to receive it. And now the question is, was there, in law, a delivery which does discharge the defendants from liability to the plaintiff? It is seen from the testimony that the actual receipt of the goods by the defendants was not from the plaintiff. He, by his agent, put them into the charge of the clerk of the charterers, and that clerk handed over the possession of them, on board the ship, to the master. The delivery at the port of destination and discharge was, in fact, from the master to the clerk of the consignees of the charterers, which was a good delivery in behalf of the owners of the ship of all goods put on board by the charterers as shipped in fact by them. There was nothing in the manner of the reception by the master of the goods; there was nothing on or about the goods themselves, or the package in which they were contained; there was nothing in any manifest, invoice, bill of lading or other instrument of writing in the hands of the master, or brought to his notice; which gave him knowledge or put him upon inquiry that the goods were to be delivered in other way than the other cargo of the ship. The plaintiff, or his immediate agent, had no personal contact with the master. The receipt taken by the plaintiff at San Francisco from the shipping clerk of the charterers, was not exhibited in San Francisco to the master or other officer of the ship, but, at New York, to the clerk of the consignees, who were the agents of the charterers. To all seeming, the trunk and its contents were not to be distinguished in mode of delivery from the general cargo of the ship. That they were not, does not appear to be the fault or neglect of the defendants, who, by their agents, the master and officers of the ship,

received them into the vessel, undistinguishable, as to mode of delivery, or as to person to whom to be delivered, from any other article of the goods laden on her, save by the fact that they were not entered upon the ship's manifest.

It is to be inferred from the testimony that the charterers of the ship were entitled to the use and benefit of her whole stowage capacity, and to have all the freight money earned by her on any goods laden on board of her. When this fact is put with that above stated, that the plaintiff did not deliver his goods to the defendants, or any immediate agent of theirs, but did deliver them to the charterers by their immediate agent, it must follow that the charterers were entitled, through their agents the consignees, to have delivery of the plaintiff's goods at the port of destination, and that the owners of the vessel had right to make delivery to those consignees, and were absolved from further liability when such delivery was made. That the goods did not appear upon any of the ship's papers was, without doubt, through inadvertence. Had there been an entry of them, it is hardly to be doubted that they would have appeared as shipped by the charterers in San Francisco to their consignees in New York city. The duty of the owners would, in such case, have been to have made delivery to those consignees. When, in fact, the goods were received on board by the owners from those charterers, who, as we must infer, had consigned the ship and her entire cargo to persons at the port of destination, it was the duty of the owners to make delivery of the entire cargo to the consignees, in accordance with their directions, in the absence of any notification from persons, owners of or interested in the cargo carried or any part of it, to do otherwise. And such delivery exonerated the owners from liability. (*Sweet* v. *Barney*, 23 N. Y., 335; *Shirwell* v. *Shaplock*, 2 Chitty, 397; *Bartlett* v. *Lond. & N. W. R'way Co.*, 7 H. & N., 400.)

That the plaintiff finally delivered to agents selected by him other than the consignees, the receipt given to him by the charterers; and that those agents called for the delivery

of the goods does not affect the case. Those agents did not make known to the master, or any immediate agent of the owners, that the goods were the plaintiff's, and that they were especially authorized to receive them. The receipt was exhibited to the clerk of the consignees, and whatever arrangement was made was with that clerk. It is claimed that the consignees' clerk who overlooked the discharge of the cargo was the clerk of the owners of the ship, and that hence notice to him was notice to the defendants. We cannot agree with this. The relation of the consignees and that of the owners was, at that time, that of two parties with adverse interests. The clerk of the consignees represented them in the duty of demanding from the owners a full delivery of every article of cargo, and of watching the process of it. He could not, without express authority, be the agent of the owners. That is not shown. In the due course of unlading the ship, her officers reached the trunk of the plaintiff, and made complete delivery of it to the consignees of the vessel and her entire cargo. This being without any knowledge of the property of the plaintiff in it, with no notice that it should take any other course than the rest of the cargo was to take, was a proper thing for the officers, acting for the owners, to do. Hence there comes in here, no question of whether there was a reasonable notice to the agents of the plaintiff, of the time and place of the discharge out of the ship of his goods. It may be conceded, for the purposes of this case, that the plaintiff of his agents were entitled to such notice; but it was not from the owners of the ship. He had not, by anything done in San Francisco or elsewhere, charged them with any duty, farther than to carry safely, and to make prompt delivery to the persons designated to receive by the charterers, who were up to that time the only agents of his in this matter made known to the defendants. The law is clear that there must be notice to the consignee, in his absence from the place of unlading in readiness to receive. (*McAndrew* v. *Whitlock*, 52 N. Y., 46.) But who was the consignee in this case ? Not the

plaintiff in person. He had not made himself known to the defendants as such. He was a sub-shipper, under the char-terers. They put the trunk on board, by virtue of their charter party, and by that token the consignees of the char-terers were made the consignees of the trunk. Actual deliv-ery was made to them.

We have not, after some research, been able to find any decision precisely touching this interesting question. None is cited to us by counsel. The cases cited in the former part hereof (such as *Parish* v. *Crawford*), do not touch this point. There, the master failed to make delivery to any person.

The case of *The Peytona* (1 Ware [2d ed.], 542; 2 Curtis C. C., 21), is not applicable. There the master wrongfully omitted to sign a bill of lading, and sailed without learning the names of the consignees, and so his ignorance of who they were did not excuse him from giving notice to them of the landing of the goods.

The case of *Bradley* v. *Duniface* ([Exch.], 7 H. & N., 200; S. C., 1 H. & C., 521 [Exch. Ch.]), comes nearer; but there the master was held upon the terms of his bill of lading, and his conduct animadverted upon, in that he was not careful to see to it that his bills of lading of two lots of the same kind of goods expressed by proper marks to what consignee each lot was to go.

The case of *Kiender* v. *Wolcott* (1 Hilton, 223), is not like this. There the carrier dealt immediately with the shipper, and knew all the facts needful to insure a correct and prompt delivery, but neglected to fix upon the goods marks which would have insured that result.

There are cases which come nearer to the one in hand. In that of *The Huntress* (2 Ware [2d ed.], pp. 89–98), it is said, perhaps *obiter:* " The goods ought to be plainly and legibly marked, so that the consignee may be easily known; and if, in consequence of omitting to do it, without any fault on the part of the carrier, the owner sustains a loss or any inconvenience, he must impute this to his own fault." (See,

also, *Rous* v. *The City of Dublin* 1 Bened., 46; *Galloway* v. *Hughes* 1 Bailey [So. Car.], 553.) In the case of *Medley* v. *Hughes* (11 La. Ann., 211), where, by fault of shipper, no bill of lading was signed by the master and taken with the vessel, so that the ship's agent did not know to whom to deliver the goods, and notice was published in a newspaper, taken by the plaintiffs, that the ship was discharging, it was held that the ship was not responsible for loss of the goods by fire, after they were discharged and put in store.

In the absence of authority to the contrary, and in view of the general principles of law regulating the conduct of carriers by sea, we are led to the conclusion that the defendants performed their duty as such, when they delivered the trunk of the plaintiffs to the consignees of the whole cargo, of which it was a part.

In this view, there was error at the trial in the refusal of the motion to dismiss the complaint at the close of the case, or in the refusal to submit to the jury the question whether the defendants were chargeable with negligence.

There should be a new trial.

All concur.

Judgment reversed.