---

## THE DREW.

*(District Court, S. D. New York.   March 20, 1883.)*

1. COMMON CARRIER—DELIVERY—NEGLIGENCE.

   Common carriers are bound to make delivery of goods according to their address.   They are answerable for frauds upon themselves, but not for frauds upon the shipper, of which they are not chargeable with notice.

2. SAME—TWO PERSONS OF SAME NAME.

   Where goods were shipped by the steamer D., addressed to "J. K., Albany," without any street address, and there were two persons in Albany of that name, one an old tradesman of good repute, who, on tender of the goods, refused them as not intended for him, and the goods were afterwards delivered from the steamer to the other person of that name, who had had a store there for a few weeks previous, where he had received goods purchased, and he was, in fact, the same man who purchased the goods of the shipper in New York, but who, shortly after the delivery, abandoned his store and disappeared, *held,* though presumptively a swindler, and though the shipper supposed the purchaser was the other tradesman of the same name, yet that the steamer was not chargeable with any knowledge of these facts, and was not liable as upon a delivery of the goods to the wrong person, but, upon refusal by the other " J. K.," was warranted in delivering them upon the claim of the former.

In Admiralty.

*Kurzman & Yeaman,* for libelants.

*W. P. Prentice,* for claimant.

BROWN, J.   The libel in this case was filed to recover $179, the value of certain goods sold by the libelants to J. Kastendike, Albany, and shipped to his address by the steam-boat Drew, May 3, 1880, on the ground that they were delivered in Albany to the wrong person.

A few days previous to the shipment a man calling himself J. Kastendike, of Albany, called at the libelants' store in New York, desiring to purchase goods.   He selected what he wanted, and left his references with the libelants.   Inquiry was made of one of the mercantile agencies, and, the report being satisfactory, the goods were shipped in two boxes marked "J. Kastendike," or "Jos. Kastendike, Albany."   There was a tradesman by the name of John Kastendike in Pearl street, Albany, who was well known there, and of good repute, and responsible, though not known to the libelants, and the replies to

the libelants referred to that tradesman. The evidence also shows that there was another man who had a store in Central avenue, Albany, with the sign "J. Kastendike," where one of the witnesses for the libelants testified that for two or three weeks previous he had at various times delivered goods forwarded by the American Express Company.

On the arrival of the Drew at Albany, on the morning of May 4th, the goods were sent from the steamer to the Pearl-street merchant, who had left the day before for New York. His wife and son, knowing, as they testify, that the goods could not be for them, refused to receive the boxes, and they were taken back to the steamer. On the same day a truckman employed by the Central-avenue man applied to the boat, exhibited a bill for them, received the goods, receipted for them, and took them to the store at Central avenue, and delivered them there, with the bill, to the same man from whom he received the bill. The libelants claim that this was a delivery to the wrong person, for which the carrier is responsible.

One of the libelants testified that the the two boxes were addressed "J. Kastendike, Pearl St., Albany;" but his testimony, as I understand it, is based upon his presumption from their usual course of business, and not from observing the direction on the boxes themselves. The shipping clerk who put up the goods and directed them was not produced as a witness, though without any fault of the libelants. The only other evidence that the goods were addressed to Pearl street is a receipt for them, signed by the proper agent of the Drew, dated May 3d. This receipt now contains the words "Pearl St." as a part of the address. About two weeks after shipment, when the libelants first apprehended any trouble in regard to the payment for the goods, it was presented to the freight agent of the Drew, and two witnesses who then saw it testify that the words "Pearl St." in the receipt were in different-colored ink, and presented a fresh appearance, as though the ink was scarcely dry, so as to excite remark at the time. The face of the receipt itself suggests strong suspicion that it was not written at the time the rest of the address was written. The words "J. Kastendike, Albany, N. Y.," are written underneath each other, in a free, easy hand, on three equidistant lines. The words "Pearl St." are crowded in between the first two lines, and between the ends of the words "Kastendike" and "Albany," and they are written in a constrained, cramped hand, where the paper is roughened and the letters somewhat blurred.

Opposed to this evidence that the goods were addressed to Pearl street, there is the positive evidence of the carman who delivered them at the Central-avenue store, and the wife of the Pearl-street merchant who rejected the boxes, both of whom testify that the address, "Pearl St.," was not on the boxes. Two witnesses from the steamer testify to the same thing; and their evidence is somewhat corroborated by the entry in the steamer's manifest of May 3d, and the delivery-book of May 4th, in which the direction is entered without any street address. The weight of evidence, notwithstanding the receipt, which cannot stand as an unimpeached voucher, is, in my opinion, altogether to the effect that the goods were addressed to Albany only, without the designation of any street.

I am not entirely satisfied even that the purchaser gave the libelant his address as at Pearl street, although that fact is testified to by one of the libelants, near the close of his testimony. On the direct examination he stated that the references of whom he inquired "located" him in Pearl street. There is no doubt, therefore, but that the libelants, when they shipped the goods, supposed the purchaser was the Pearl-street man; but no card or memorandum from the purchaser, no entry by the libelants made at the time, is produced, showing that the address of Pearl street was given. The bill of the goods forwarded by them does not contain it; and the reply of the mercantile agency, which is in writing and produced, does not so state, as the libelants were understood at first to testify. The envelope containing the bill returned from the Pearl-street man is not produced; its return from the Pearl-street store is no evidence that it was specifically addressed there, since it would naturally have gone to him, as an old and well-known merchant, without such specific address.

But I do not find it necessary to pass upon this question, since the other undisputed facts in the case, coupled with the conclusion of fact that I have stated above, namely, that the goods were addressed only to J. Kastendike, Albany, without the designation of the street, are sufficient to exempt the steamer from liability. That the purchaser of the goods was a swindler may be assumed; but there is no evidence, and it cannot be taken for granted, that his name was not J. Kastendike. He evidently was dealing in Albany under that name, and, there being no evidence to the contrary, it must be assumed that such was his name. The case is, therefore, one of delivery by the carrier to the very man who had bought the goods in person; a

delivery at the purchaser's store in the city where the boxes were addressed, without any intimation by the shipper of any intention that they should be delivered to any different person or at any different place. This would seem to be a perfect fulfillment of a carrier's obligation.

Counsel for the libelants contend that several authorities in this country show that the consignee must "identify himself as the real man of that name, and as the person entitled to the goods." If this doctrine were applied in the sense claimed, it would make carriers insurers not only against frauds upon themselves, but insurers against frauds upon the consignor, of which they had no knowledge or grounds of suspicion. There is no question that the carrier must deliver to the person addressed, and must answer for the consequences of any mistakes, fraud, or forgeries practiced upon himself. Hutch. Carr. §§ 344, 350. But the person addressed in this case was the man to whom in fact the delivery was made, although the seller erroneously supposed him to be the Pearl-street man. There are several cases where the purchaser has personated some fictitious person or firm to whom the goods were addressed, in which the carrier has been held liable for delivering them to a person other than the person or firm addressed, or at a wholly different place from that designated. *Price* v. *Oswego Ry. Co.* 50 N. Y. 213; *Winslow* v. *Vt. & M. R. Co.* 42 Vt. 700; *Amer. Exp. Co.* v. *Fletcher,* 25 Ind. 492; *Amer. Exp. Co.* v. *Stack,* 29 Ind. 27; *Stephenson* v. *Hart,* 4 Bing. 476; *Duff* v. *Budd,* 3 Brod. & B. 177. An examination of these cases shows that in every one of them the court held the carrier liable only on account of some negligence on his part. See, also, *Zinn* v. *N. J. Steam-boat Co.* 49 N. Y. 442.

Where the name of a consignee is a fictitious name, there is negligence in delivering the goods, because proof of identity should be required before delivery, and the requirement of that proof would disclose the fraud and prevent the delivery of the goods. In the Indiana cases the want of ordinary diligence in ascertaining the party intended is the ground of decision; and in the two English cases cited it is the same. But in the present case there is no fictitious name, nor any question about the identity of the person to whom delivery was made as the very person who had bought the goods and who answered to all that was designated in the address on the boxes; and the mere fact that the seller supposed the purchaser was the Pearl-street man, when the address in no way indicated him rather than the other, cannot charge the carrier with negligence in making de-

livery to the real purchaser after the other man had refused them. I fail to find any case in which a carrier has been held liable in respect to a fraud practiced upon the consignor, except where there was plain dereliction of duty in the carrier, or such suspicious circumstances brought to his knowledge as charges him with negligence in making the delivery.

This subject was carefully considered in the case of *McKean* v. *McIvor*, L. R. 6 Exch. 36. The court there say:

"If the carrier deliver at the place indicated, or does what is equivalent to delivery there, he does all he is bound to do. He obeys the sender's directions, and is guilty of no wrong. To make him liable there must be some fault, and when he has carried out the directions of the sender, the mere fact that he has delivered the goods to some person to whom the sender did not intend the delivery to be made is not sufficient to support the allegation that he has converted them."

There was nothing upon this shipment to indicate to the carrier that the goods were designed for the Pearl-street merchant rather than the one who had his store in Central avenue. In the case of *The Huntress*, 2 Ware, 89, WARE, J., says:

"It is certain, also, that the goods ought to be plainly and legibly marked, so that the owner or consignee may be easily known; and if, in consequence of omitting to do it, without any fault on the part of the carrier, the owner sustains a loss, or any inconvenience, he must impute this to his own fault." *Robinson* v. *Chittenden*, 69 N. Y. 525; *Roberts* v. *Chittenden*, 88 N. Y. 33.

In like manner, where there are two persons in business of the same name in the same city, and the sender of the goods does not distinguish which is intended by the street number, and where the goods on tender have been rejected by the one, no fault can be imputed to the carrier in making delivery to the other, who on presentment of a bill for them appears to be the vendee. The fault is in the shipper in not making the directions specific. Conceding that the purchaser of these goods was a swindler, the carrier had no knowledge of it, and there was nothing to charge him with knowledge or suspicion of it. Carriers by water are not bound to seek the consignee on land, nor to institute inquiries at his store, or of the public, concerning his circumstances or previous history or probable credit. *Zinn* v. *N. J. Steam-boat Co.* 49 N. Y. 442; *Witbeck* v. *Holland*, 45 N. Y. 13.

The mere fact that the purchaser had occupied his store only some two or three weeks, so far as the evidence shows, although it may have been longer, even if it had been known to the carrier, was not

in any way incompatible with his being the *bona fide* purchaser of the goods, and the person to whom delivery was intended by the vendor to be made. The goods having been shipped without any bills of lading, no documentary evidence of title was required. It does not appear whether the bill for the goods presented was genuine or forged. Had the goods been addressed to Pearl street it would have been negligence and a violation of the sender's orders to deliver them to any different person elsewhere. As they were not so addressed, when they were rejected there, the carriers were warranted in the inference that they were intended for the Central-avenue man of the same name, who was the purchaser in fact. So far as I can perceive, the carrier is not chargeable with knowledge of any suspicious circumstances, and must, therefore, be absolved from liability.

Judgment for the claimants, with costs.