# Pelham *v.* Chattahoochie Grocery Co.

## *Detinue.*

(Decided June 9, 1908.  47 South. 172.)

1. *Witnesses; Examination; Questions Assuming Fact; Failure.*— Where it undisputedly appears that a merchant purchased a stock of goods on a credit and made a transfer of the same, either for no consideration or for a consideration the greater part of which was a pre-existing debt, and did not pay his existing and outstanding debts, the act of such merchant was a failure in business within the common acceptation of that term; and hence, it was not error to permit a question which assumes that the merchant had failed in business, the suit being in detinue for goods sold on credit shortly before the transfer.

2. *Same; Calling Attention to Former Statement.*—Where the plaintiff introduced as a witness, a merchant who had failed, for the purpose of showing his insolvency at the time he purchased the plaintiff's goods, and such witness answered that he did not know how much he owed a named person at the time of the purchase, it was competent for the plaintiff to ask him if he did not testify on the former trial of the case that he owed such person a certain amount.

3. *Same; Impeachment; Immaterial Matter.*—Matter immaterial to the issue cannot be made the predicate for impeaching a witness.

4. *Same; Contradictory Statement; Materiality to the Issue.*— Where a witness testified that the consideration was a certain sum, he may be asked on the cross, as a predicate for impeachment, if he had not stated on a previous occasion that the consideration was a smaller sum, such matter being relevant on the issue of the bona fide of the purchase from the insolvent merchant.

5. *Sales; Fraudulent Purchase; Bonafides; Consideration.*—Inadequacy of consideration in the sale from a failing merchant to his transferor may be taken into account in determining the good faith of the transferor in his purchase of goods from one who had bought the goods on a credit with intention not to pay for same.

[Pelham v. Chattahoochie Grocery Co.]

6. *Same; Insolvency and Fraud of Buyer.*—A purchase of goods is fraudulent, and may be disaffirmed by the seller where the purchaser at the time of the sale was insolvent, or in failing circumstances, and had the design not to pay for the goods, or had no reasonable expectation of being able to pay for the goods, and either represented that he was solvent, or intended to pay, or had reasonable expectation of being able to pay, or failed to disclose his financial condition, or the fact that he did not intend to pay.

7. *Same; Insolvency; Property Not Subject to Legal Process.*— Within the meaning of the rule that a sale of goods by an insolvent person, who either does not intend to pay for the goods, or has no reasonable expectation of being able to pay therefor, may be avoided by the seller, the debtor may be said to be insolvent if his property is so situated that it cannot be reached by legal process and subjected without his consent to the payment of his debts.

8. *Insolvency.*—Solvency involves not only the ability of the debtor to pay, but the ability of the creditor to enforce payment by legal process; and hence, a man may be fully able to pay his debts, if he will, and yet be legally insolvent, if his property is so situated that it cannot be reached by process of law and subjected without his consent to the payment of his debts. It would be a legal solecism to say that a debtor is legally solvent when his entire property is exempt to him and cannot be subjected to his creditors against his will.

9. *Charge of Court; Applicability to Evidence.*—In the absence of testimony tending to show such knowledge, an instruction asserting that if the plaintiff knew that the defendants transferor was insolvent at the time he sold him the goods, there was no fraud entitling plaintiff to rescission was propely refused as not applicable to the evidence.

10. *Same.*—Where there was evidence affording an inference authorizing the jury to find that defendant had notice of the fraud perpetrated by his transferor on plaintiff in the purchase of goods, instructions requested by the defendant which ignored such tendency were properly refused. (Dowdell and McClellan, JJ., dissent.)

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by the Chattahoochee Grocery Company against A. Pelham. From a judgment for plaintiff, defendant appeals. Affirmed.

The Chattahoochee Grocery Company sold one Reeves several bills of goods while in business as a merchant. Reeves sold the stock of goods to appellant without paying for the goods purchased from the Chattahoochee Grocery Company and other creditors, and the appellee in this action sought a rescission for fraud and to retake the goods in an action of detinue. The facts are sufficiently stated in the opinion of the court.

[Pelham v. Chattahoochie Grocery Co.]

The following written charges were refused to the defendant: (1) The affirmative charge. (4) "The court charges the jury that if, at the time of the sale of goods in question, Reeves had on his books solvent accounts due him which amounted to more than he owed, then the court charges the jury that Reeves was not insolvent, nor in failing circumstances; and if such be the fact the verdict should be for the defendant." (6) "The court charges the jury that if the value of Reeves' property, including accounts on his books, was more in amount than he owed, and if such accounts could be relied upon, then Reeves was not insolvent." (7) "If the jury should believe that Reeves was insolvent or in failing circumstances, and that this fact was known to plaintiff's agent at the time he sold the goods, then the jury should find for the defendant." (10) "The court charges the jury that, if they believe from the evidence that the witness Mays knew of the financial condition and standing of Reeves at the time of the sale of goods in question, then you should find for the defendant." (12) "The court charges the jury that the defendant, in order to protect himself in this suit, or against the claim of the plaintiff, was not required to pay full value for the goods, but that the law is satisfied if the defendant paid anything of value for them, and if the jury believe that the defendant paid full value for the goods it will be your duty to find a verdict for defendant." (13) "The court charges the jury that, if they believe from the evidence in this case that the defendant Pelham paid Reeves $150 in money and surrendered a note for $350, or that he did either, for the goods in question, then your verdict will be for the defendant." (16) "The court charges the jury that, although they may believe from the evidence that Reeves committed a fraud in the purchase of said goods, such as under the

law would entitle the plaintiff to reclaim the goods, yet if they believe from the evidence that the defendant paid value for said goods, then your verdict will be for the defendant."

W. O. Mulkey, for appellant. A witness cannot answer a question which assumes as true a fact in dispute. It was not competent for the plaintiff to ask his witness Reeves if he had not stated on a former trial that he owed a certain person a certain amount.—*L. & N. R. R. Co. v. Hurt,* 101 Ala. 34. A witness may not be impeached as to collateral matters.—*Bessemer L. & I. Co. v. DuBose,* 125 Ala. 448; *Beall v. Folmar,* 122 Ala. 420; *Carter v. The State,* 133 Ala. 106. Under the facts in this case Reeves was not shown to be insolvent.—*Pelham v. Chattahoochie Groc. Co.,* 41 South. 12; *McCormack v. Joseph,* 77 Ala. 236. The 4th and 6th charges should have been given.—11 A. & E. Ency. of Law, 168. The 10th charge should have been given.—*McCormack v. Joseph, supra.* Charges 12, 13 and 16 should have been given.—71 Ala. 215; Ib. 295; 53 Ala. 535.

W. L. Lee, and C. D. Carmichael, for appellee. This case should be affirmed on the authority of *Brown Shoe Co. v. Maxwell,* 114 Ala. 314, and *Pelham v. Chattahoochie Groc. Co.,* 146 Ala. 216.

TYSON, C. J.—Several exceptions were reserved during the trial to the ruling of the court upon the admission of testimony. The first of these relates to the court's refusal to exclude the answer of witness Pomeroy to certain questions propounded to him. The motion to exclude was upon the single ground that these answers assumed that Reeves, the purchaser of the goods from plaintiff, had failed in business. An examination of the questions and answers to which the objection was

interposed will disclose, when fairly construed, that their purpose was simply to fix the time when the goods were sold by plaintiff to Reeves. But, even should it be conceded that the fact of Reeves' failure was assumed in both questions and answers, the fact of his failure is shown undisputably by the testimony in the cause. He was a merchant, and according to all the evidence he disposed of his stock of goods to the defendant, either for a consideration the greater part of which was to pay a pre-existing debt which he owed him, or for no consideration whatever, for the purpose of defrauding his creditors; and this disposition of his business was made without paying for much of the goods which he had on hand and which went into the possession of defendant. If this was not a "failure," in the common acceptation of the word, we must confess our ignorance of the meaning of that word. As said in *Mayer v. Hermann,* 10 Blatchf. 260, Fed. Cas. No. 9,344: "Inability to meet these engagements in the usual course of business has been again and again adjudged to constitute insolvency, within the meaning of the bankrupt law. When, therefore, a merchant fails to pay his notes or other mercantile obligations as they become payable, the immediate presumption of inability to pay arises. This is according to the universal sense of the mercantile world. When a merchant does not so pay, he is at once and everywhere assumed, in the common language applied to the subpect, to have failed."

Reeves, the purchaser of the goods, was examined in plaintiff's behalf for the purpose of showing his insolvency or failing circumstances at the time he purchased the goods for which this action was brought to recover. The method adopted to establish his insolvency in the main was to show by him the extent of his indebtedness to other parties. During his examination he stated that

he could not say what he owed W..W. Kelly in February, 1903. He was thereupon asked if it was not a fact that on a former trial of this cause he testified that he owed W. W. Kelly & Co. in February, 1903, over $100. ` The objection interposed to the question was that it called for incompetent and illegal testimony, which was over-ruled. The witness answered that he did swear on a former trial that he owed W. W. Kelly & Co. over $100. Motion was made to exclude this answer upon the same grounds, which was also overruled. Under our decisions, the soundness of which it is now too late to question, there was no error in either of the rulings.—*Campbell v. State*, 23 Ala. 44; *White v. State*, 87 Ala. 24, 5 South. 829; *Griffin v. State*, 90 Ala. 583, 8 South. 812; *Hemingway v. Garth*, 51 Ala. 530; *Thomas v. State*, 117 Ala. 178, 23 South. 665; *Schieffelin v. Schieffelin*, 127 Ala. 35, 28 South. 687.

During the course of the trial this same witness (Reeves) was introduced by defendant for the purpose of showing the value of the goods he sold to defendant and the consideration paid for them. Among other things he testified that Pelham, the defendant, paid him for the goods $150 in cash and surrendered to him his past due note for $350. On cross-examination by plaintiff's counsel, as a predicate for his impeachment, he was asked if he did not make the statement, at a certain designated time and place, to one Mays, that Pelham paid to him in cash $125 and a note for $350 for the stock of goods. He replied that he had made no such statement. The objection was made to the question that it was not material whether the price paid in cash was $150 or $125 and therefore the testimony was not competent for the purpose of impeaching the witness. On rebuttal, Mays was introduced by plaintiff, and testified, against defendant's objection on the ground above

set forth, that Reeves had made the statement indicated by the impeaching question to him. It is unquestionably the law that immaterial matter cannot be made the predicate for the impeachment of a witness. But is it the law, as laid down in the former opinion in this case (146 Ala. 221, 41 South. 12, 8 L. R. A. [N. S.] 488), that "it is not important that the consideration was in part cash, or *even that the price paid was greatly less than the value of the property,* provided he (Pelham) parted with a *consideration of some value as* distinguished from a merely good consideration" (italics ours)? If this proposition be sound, then defendant's objection should have been sustained. On the other hand, if the proposition be unsound, then the rulings of the court were correct. It should be borne in mind that we are dealing with the defense of bona fide purchaser for value, and not merely with that of a purchase for value.

Suppose the stock of goods had been worth say $500, as the testimony tends to show was its value, and the defendant had purchased it for $10; would not the gross inadequacy of price have been a circumstance alone sufficient to have suggested to his mind that the title to the goods was defective? Or at least would it not have been a circumstance, along with the other evidence, for the consideration of the jury as militating against his good faith and as supporting their verdict imputing to him notice of defects in his vendor's title? We think so. And this conclusion is fully sustained by the authorities. In Wade on Notice, * 23, it is said: "Inadequacy of price paid, under circumstances otherwise of a suspicious character, may be sufficient to excite inquiry. When there is a stronger incentive to pass the title to one who will be in a situation to assume the character of an innocent purchaser, the gross disproportion of the

amount paid to the real value would be such a badge of
fraud as to inform the purchaser so loudly of intended
wrong that he will not be permitted to shelter behind
the fact that he did not know of the defect in his gran
tor's title."

In 23 Am. & Eng. Ency. of Law, p. 513, it is said:
"Inadequacy of price is material in ascertaining wheth-
er the purchaser had notice of any defect in the title,
and when the price was grossly inadequate that circum-
stance alone had been held sufficient to suggest to the
mind of the purchaser that the title was defective and
thus to charge him with constructive notice. It is clear,
also, that gross inadequacy of price may be considered
with other circumstances as a ground for imputing to
the purchaser notice of adverse rights or defects in the
title." Many adjudged cases are cited in notes which
clearly support the text. As bearing directly on the
point, see, also, 24 Ency. Law, p. 1174, and cases in
notes 3 and 4. In addition to these cases, see, also, 2
Pomeroy, Eq. Jur. § 600, where that great author,
speaking to the subject of notice to purchasers, pro-
pounds and answers the following question: "What
facts are sufficient to put the party (purchaser) upon
an inquiry, so that he may thereby be charged with
the actual notice of fraud from circumstantial evidence?
Among the facts to which, as evidence, such force has
been attributed, are close relationship, personal inti-
macy, or business connections existing between the pur-
chaser and the party with whom he is dealing, or be-
tween him and the adverse holder; great inadequacy of
the price, which may arouse the purchaser's suspicion
and put him upon inquiry as to the reasons for selling
the property at less than its apparent value," etc. See,
also, Warvelle on Vendors, §§ 609, 610. Following
these principles, which are clearly the law, we are con-

strained to hold that the former opinion in this case is wrong on this point and should be overruled.

There are also other propositions in the opinion which, if not positively erroneous, are undoubtedly misleading and should be corrected.  These propositions are embodied in the rule there formulated respecting the plaintiff's right of rescission on the ground of fraud.  That rule is stated in this language:  "To authorize the rescission of a sale of chattels on the ground of fraud on the part of the vendee, so that a recovery may be had in detinue or trover against the first purchaser or subpurchaser, these conditions or facts must be combined: (1) The purchaser must at the time of the transaction have been insolvent or in failing circumstances.  (2) The first purchaser must have had either a preconceived design not to pay for the goods or no reasonable expectation of being able to pay for them.  (3) The purchaser must have intentionally concealed these facts, or made fraudulent respresentations in regard to them.  (4) The sale must have been induced by the fraudulent representations or concealment."  This is substantially the form, if not the exact language, of the rule which was condemned as misleading in the case of *Maxwell v. Brown Shoe Co.*, 114 Ala. 304, 21 South. 1009.  In that case this court said:  "It cannot be said that this is a very happy or concise statement of the doctrine."  And, after showing its misleading tendency, we restated the rule in this language:  "A sale and purchase of goods is fraudulent, and open to disaffirmance by the seller, when the purchaser was at the time insolvent, or in failing circumstances, and had the design not to pay for them, or had no reasonable expectation of being able to pay for them, and either represented that he was solvent, or intended to pay, or had reasonable expectation of being able to pay, or failed to disclose his financial condition,

or the fact that he did not intend to pay for the goods." Says the court: "This is the sense and substance of the rule as laid down in our own cases, with the qualification or explanation which then accompanies it, and in the form we have given it no tendency is involved to mislead to the conclusion that an affirmative fraudulent concealment is essential to its application." The rule last quoted is undoubtedly the correct one, and should be followed in preference to one formulated in the former opinion in this case.

We need only apply this principle to the tendencies of the testimony in this case, as it was applied in the *Maxwell Case, supra,* to see that the affirmative charge requested by defendant was properly refused. If it may not be said that it is undisputedly shown by the testimony, it was clearly open to the jury to find that at no time, from the beginning of the purchases by Reeves of goods of plaintiff until his disposition of the stock of goods to defendant, could his simple contract creditors have coerced payment of their debts by legal process.

A man may be fully able to pay his debts, if he will, and yet in the eye of the law he is insolvent if his property is so situated that it cannot be reached by procses of law and subjected, without his consent, to the payment of his debts. To say that a debtor is solvent, when his entire estate is exempt to him from the payment of his debts and cannot be subjected by his creditors against his will, would be a solecism. Solvency involves, not only the ability of the debtor to pay, but the ability of the creditor to enforce payment by legal process. As said by the Supreme Court of Missouri in *Mitchell v. Bradstreet Co.,* 116 Mo. 226, 22 S. W. 358, 724, 20 L. R. A. 142, 38 Am. St. Rep. 592: "Solvency implies as well the present ability of the debtor to pay out of his estate all of his

debts, as also such attitude of his property as that it may be reached and subjected to process of law, without his consent, to the payment of such debts." See, also, 22 Cyc. p. 1260. There was, therefore, no error in refusing written charges 4 and 6, requested by the defendant.

Charges 7 and 10 proceed upon the theory that, if Reeves' insolvency was known to plaintiff's agent at the time he sold Reeves the goods there was no fraud committed by Reeves entitling plaintiff to rescind the sale. There was no testimony tending in any degree to support the postulated fact of Reeves' insolvency being known to plaintiff's agent at the time of the sale of the goods, as asserted in each of these charges. They were abstract, and were therefore properly refused.

Charges 12, 13 and 16, requested by defendant, were evidently framed upon the proposition laid down in the former opinion first above discussed, shown to be erroneous. Furthermore, they ignore other tendencies of the testimony affording an inference from which the jury was authorized to find that defendant had notice of the fraud perpetrated by Reeves upon plaintiff in the purchase of the goods. Their refusal was proper.

Finding no error in the record, the judgment appealed from must be affirmed.

Affirmed.

HARALSON, SIMPSON, ANDERSON and DENSON, JJ., concur. DOWDELL and McCLELLAN, JJ., dissent.