FRED L. MARTIN *vs.* J. FRANK GREEN.

Penobscot.    Opinion February 23, 1918.

*Sales.    Passing of title where vendee represents himself to be another.    Rule as to the contract of sale being void or voidable where there is fraud or fraudulent representations.    When the sale must be rescinded.    Title of innocent purchaser buying from fraudulent purchaser*

In an action of trover to recover the value of a horse, it appeared that R., a stranger fraudulently assuming the name of another and representing that he was a resident of Winn, purchased the horse from the defendant giving in payment therefor two notes signed under the assumed name and secured by a mortgage upon this horse and another.    The mortgage was duly recorded in the town clerk's office in Winn.    R sold the horse three days later to. C, and four weeks thereafter C sold it to the plaintiff.    About three months later the defendant took the horse from plaintiff's possession and retained it.

Upon defendant's motion to set aside a verdict in favor of the plaintiff, it is

*Held:*

1.    The fact that the seller was induced to sell by fraud of the buyer made the sale not void but voidable.    There was a de facto contract of sale by which the vendor at the time intended to convey and did convey the property to the vendee on his own responsibility.

2.    Upon discovery of the fraud the vendor could have rescinded the contract and have recovered the property from the fraudulent vendee or from a purchaser from the vendee having knowledge of the infirmity.

3.    The jury have found that the plaintiff here was a bona fide purchaser for value without notice of the fraud and the evidence warrants the verdict.

4.    An innocent purchaser of goods for a valuable consideration, even from a vendee who has obtained them by fraud, obtains a good title as against the original vendor.    He has the superior equity.    The defendant therefore cannot successfully set up the fraudulent sale in defense to this action.

5.    The defendant cannot hold the horse under his mortgage.    As R. was not a resident of Winn the record was not constructive notice of the existence of the mortgage.    It was a mere nullity as against a bona fide purchaser for value without notice.

Action of trover.    Plea, general issue with brief statement claiming title in defendant.    Verdict for plaintiff in the sum of $339.60. Motion for new trial filed by defendant.    Motion overruled.

Case stated in opinion.

*Mayo & Snare,* for plaintiff.

*B. W. Blanchard,* for defendant.

SITTING: CORNISH, C. J., SPEAR, BIRD, HANSON, PHILBROOK, JJ.

CORNISH, C. J. Action of trover to recover the value of a certain horse. Title is the issue. The defendant is a resident of Bangor and a dealer in horses. On August 7, 1915, a man came to his place of business and represented himself to be Frank E. Towle of Winn. He looked over the horses in the stable and finally purchased from the defendant the one in question, for an agreed price of $325. giving in consideration one note for $100. on one month and one note for $225. on four months, both notes being secured by a mortgage on this horse and on one other alleged to be in the mortgagor's possession. The notes and mortgage were signed "Frank E. Towle," and the mortgage was recorded in the office of the town clerk of Winn on August 9, 1915. It is admitted that the vendee was not Frank E. Towle but a man by the name of Roche, and that Roche was not a resident of Winn, where the mortgage was recorded.

Roche sold the horse three days later, on August 10, 1915, to one Costly of Silver Ridge Plantation, taking in exchange another horse, a carriage and a certain amount of money, all of an estimated value of $150. Costly says that Roche, who was a stranger to him, told him that he lived in Lincoln and that he had purchased the horse two or three days before from a farmer in that town. He knew nothing more in regard to the source of title. Costly kept the horse about four weeks and sold it to the plaintiff in exchange for other horses. The plaintiff took the horse to his own home in Springfield and kept him until November 5, 1915, when he was taken by the defendant from the plaintiff's possession. The jury in this action of trover found in the plaintiff's favor in the sum of $339.60, and the case is before the Law Court on defendant's motion for new trial.

The material facts are really not in controversy, and they raise a question of law, novel in this State. The primary question to be decided is whether the title to the horse passed to Roche under the transaction between Green and him. The defendant claims that the sale was absolutely void, a mere nullity; that in consequence of the

deception and fraud practiced upon Green no title passed from him; that it was the same as if Roche had stolen the horse and carried him away. The plaintiff contends, on the other hand, that under the facts of this case the sale was not absolutely void, but merely voidable, that as between Green and Roche, Green could have rescinded the contract and recovered his horse, but that until that was done, the title remained in Roche and Green could not hold the horse as against a bona fide purchaser for value from Roche. We think the plaintiff's contention is correct, and supported by both reason and authority.

All the elements of a sale were present and the minds of the parties met. They agreed upon the article to be sold, and the price and the terms of payment. Nor was there any doubt as to who was the vendor and who was the vendee. Green intended to sell to the identical man before him, with whom he was dealing, whatever his name might be, and to take back a mortgage from that man. That actual intent governs. "Presentia corporis tollit errorem nominis." Identification by the senses overrides description. The act followed the intent and the horse was delivered to the intended vendee. It was what is termed a de facto contract of sale and title thereby passed, to be defeated because of fraud only as between vendor and vendee, or as between vendor and a purchaser having knowledge of the infirmity. *Edmunds, et als.,* v. *Merchants Despatch Transportation Co.,* 135 Mass., 283, a group of cases tried together, is directly in point. In two of those cases a swindler representing himself to be Edward Pape of Dayton, Ohio, who was a reputable merchant, appeared personally in Boston and bought of the plaintiffs the goods in controversy, and they were delivered to the defendant for transportation to Dayton, where they were delivered to the consignee, the man who had purchased them in Boston. It was held that an action against the carrier could not be maintained, the title having passed to the purchaser and the carrier having delivered them to the party who owned them. The ground of the decision is stated in part as follows: "The fact that the seller was induced to sell by fraud of the buyer made the sale voidable but not void. He could not have supposed that he was selling to any other person; his intention was to sell to the person present and identified by sight and hearing; it does not defeat the sale because the buyer assumed a false name or practiced any other deceit to induce the vendor to sell." . . . . "There was a de

facto contract, purporting, and by which the plaintiffs intended to pass the property and the possession of the goods to the person buying them; and we are of opinion that the property did pass to the swindler who bought the goods. The sale was voidable by the plaintiffs; but the defendant, the carrier by whom they were forwarded, had no duty to inquire into its validity. The person who bought them and who called himself Edward Pape, owned the goods, and upon their arrival in Dayton had the right to demand them of the carrier." This doctrine has been affirmed in *Emery* v. *Seavey*, 148 Mass., 566-569, and *Harrison* v. *Dolan*, 172 Mass., 395-396.

The principle of the passing of title under a de facto contract is not to be confused with a line of cases where the swindling vendee acts not for himself but represents that he is the agent of or is acting for a third party. In such a case it has been held that no title passes because the vendor does not intend to sell to the party with whom he is personally dealing, but with the third party, for whom the swindler claims to be acting but is not. The third case considered in *Edmunds, et als.,* v. *Merchants Despatch Transportation Co.,* 135 Mass., 283, belongs to this class, and on this point the opinion says: "The third case differs materially from the others. In that case the contract did not purport, nor the plaintiffs intend to sell to the person who was present and ordered the goods. The swindler introduced himself as a brother of Edward Pape of Dayton, Ohio, buying for him. By referring to the Mercantile Agency he tacitly represented that he was buying for the Edward Pape who was there recorded as a man of means. The plaintiffs understood that they were selling, and intended to sell to the real Edward Pape. There was no contract made with him, because the swindler who acted as his agent had no authority, but there was no contract of sale made with anyone else. The relation of vendor and vendee never existed between the plaintiffs and the swindler. The property in the goods therefore did not pass to the swindler; and the defendant cannot defend, as in the other cases, upon the ground that it has delivered the goods to the real owner."

The English cases observe the same distinction and recognize the force of a de facto contract of sale. Whether the sale was intended to be to the identical person with whom the dealings are had or to an another for whom he is acting is a question of fact, and upon the decision of that fact depends the principle of law to be applied. In

*Hardman* v. *Booth,* 1 H. & C., 803, no contract of sale was held to exist because the court found that the plaintiff believed he was contracting with the firm of Gandell and Co. and not with Edward Gandell personally, who made the trade and falsely represented himself to be a member of that firm and to be acting for them.

In *Lindsay* v. *Cundy,* 1 Q. B., Div. 348, the court, including Blackburn and Mellor, JJ., held that upon the facts disclosed, the intention of the vendors was to contract with the person who was the fraudulent vendee and not with another party whose name he had simulated. Accordingly title was held to pass. On appeal to the House of Lords this finding was reversed, not because the principle of law had not been well stated, but because the court found as a fact that there was no contract between the vendors and the fraudulent vendee, and the vendors intended to contract with and believed they were contracting with the third party for whom the vendee falsely claimed to be acting. It was a reversal of a finding of fact and not of a ruling of law. *Cundy* v. *Lindsay,* L. R., 3 App. Cas., 459.

In the case at bar the verdict of the jury establishes the fact that the sale was made to the vendee as an individual on his own responsibility, and therefore the fraudulent misrepresentation as to name had the same effect as a fraudulent misrepresentation as to the amount of property he possessed. It rendered the sale not void but voidable. The evidence justifies the finding.

Having settled this primary question, as to the nature of the sale, it follows that the vendor gave the vendee an apparent or implied right to dispose of the property, and that a bona fide purchaser for value from the vendee should be protected in his purchase. The innocent purchaser of goods for a valuable consideration, even from a vendee who has obtained them by fraud, obtains a good title as against the original vendor. "He has the superior equity." *Neal* v. *Williams,* 18 Maine, 391.; *Dilson* v. *Randall,* 33 Maine, 202; *Titcomb* v. *Wood,* 38 Maine, 561; *Tourtellott* v. *Pollard,* 74 Maine, 418. The good faith of the plaintiff here is abundantly proved. He is second removed from Roche the defrauding purchaser, and there is no evidence tending to charge either Costly, the first purchaser from Roche, or the plaintiff who bought from Costly, with knowledge of the infirmity of the title.

Had Roche been a resident of Winn, where the mortgage was recorded, Green would have been justified in taking the horse under

the mortgage, R. S., Chap. 96, Sec. 1. But as Roche was not a resident of that town the record was not constructive notice of the existence of the mortgage, and was a mere nullity as against a bona fide purchaser without notice. *Horton* v. *Wright,* 113 Maine, 439.

*Motion overruled.*