CHICAGO, M., ST. P. & P. R. CO. v. FLANDERS.*

No. 9285.

Circuit Court of Appeals, Eighth Circuit.

Feb. 1; 1932.

*Rehearing denied March 8, 1932.

John N. Hughes, Willis J. O'Brien, and Stanton S. Faville, all of Des Moines, Iowa, for appellant.

Jepson, Struble & Sifford, of Sioux City, Iowa, for appellee.

Before KENYON, VAN VALKEN-BURGH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case the appellee as plaintiff below brought action against the appellant railway company to recover the value of a carload of cattle. The parties will be referred to as they appeared in the lower court.

The petition contained two counts. In the first, plaintiff pleaded a written contract dated February 17, 1930, by which the defendant as a common carrier agreed to transport from Sioux City, Iowa, to Henkin, S. D., and there deliver to Will Buntrock, thirty-five head of cattle; that the cattle were delivered by plaintiff to defendant at Sioux City, Iowa; but that defendant failed to carry out the contract and failed to make delivery to the consignee named therein, and likewise failed to return them to plaintiff, to his damage in the sum of $3,479.85. In the second count it was alleged that defendant as a common carrier, on the 17th of February, 1930, received from plaintiff thirty-five head of cattle consigned to Will Buntrock, Henkin, S. D., and that under the law defendant was required to safely deliver the cattle to the consignee, but that it negligently and carelessly failed so to do, to plaintiff's damage in the sum of $3,479.85.

The defendant's answer, in addition to a general denial, pleaded that at the time mentioned in plaintiff's petition plaintiff and defendant signed a uniform live stock contract as set out in plaintiff's petition; that the property described therein was in fact the property of a person who represented himself to be, and was known to plaintiff as, Will Buntrock, and who purchased the property from plaintiff and directed plaintiff to cause the same to be billed and shipped to him under the name of Will Buntrock; that the bill of lading, as well as title to the property, was transferred to and received by said person representing himself to be and known by the plaintiff as Will Buntrock, to whom the cattle were billed, and to whom plaintiff had sold them.

The undisputed evidence, substantial in character, proved the following state of facts: At the times in the petition mentioned plaintiff was engaged in the buying and selling of cattle at Sioux City, Iowa; on February 17, 1930, one of his salesmen entered into negotiations for the sale of thirty-five head of cattle to a party representing himself to be Will Buntrock, of Henkin, S. D. As this individual wished to buy the cattle on credit, the salesman took him to the plaintiff, whose cattle they were, so that terms of credit might be agreed upon. At the request of plaintiff, this stranger signed a property statement, describing certain farm lands near Henkin, S. D., as well as certain personal property consisting of cattle, horses, hogs, mules, sheep, and bills receivable, besides a considerable quantity of corn, oats, and spelt, and showing a total net worth of about $28,000. Plaintiff then telephoned the register of deeds at Madison, S. D., the county seat of the county in which the land described was located, and was advised that Will Buntrock was a substantial farmer, and that title to the lands described in the property statement appeared of record in his name. Plaintiff then sold the cattle to this stranger, taking from him a promissory note for the purchase price, plus freight charges, secured by a chattel mortgage describing the thirty-five head of cattle sold, fifteen head of other cattle, and one thousand bushels of corn, the cattle and chattels being described as being in possession of the mortgagor on his premises described as the northwest quarter of section 16, township 105, range 52, Lake county, S. D. This note and mortgage the stranger signed under the name of Will Buntrock. Plaintiff agreed to pay freight charges as a part of the consideration for the note.

The cattle were released by plaintiff from the stockyards at Sioux City, Iowa, and there delivered to the defendant for transportation under a straight bill of lading, which named Will Buntrock, of Henkin, S. D., as consignee. The shipment went forward on one of defendant's trains, leaving Sioux City about 8:30 p. m. February 17, 1930.

As required by the laws of South Dakota (Rev. Code 1919, § 1578), the mortgagor was furnished with a correct copy of the mortgage, and the mortgage contains a recital that: "Receipt of a full, perfect and complete copy of the above mortgage is hereby acknowledged." He was also given a copy

of an account sales, which was made out on the stationery of J. A. Flanders, Sioux City, Iowa, and recited the sale of these cattle to Will Buntrock.

Before the train in which this car of cattle was being transported arrived at Sioux Falls, S. D., the purchaser of these cattle presented himself at the office of the defendant railway company at Sioux Falls, S. D., reported that he was the owner of the car of cattle about to arrive on an incoming train, and wished to have the destination of the car changed to Colton, S. D., a few miles from Henkin. There was no station agent on duty at the time, but he made his request to a telegraph operator, who was the only representative of the railroad company on duty at the time, and exhibited to him a copy of the chattel mortgage which had been furnished him, also the account sales which had been furnished him, and a shipping order. Convinced that this party was the owner of the cattle, and as such entitled to direct the change requested, the telegraph operator sent a message to the conductor in charge of the train, directing him to cut the car out and spot it at the Colton stockyards. On arriving at Colton, the conductor cut the car out and spotted it at the stockyards, ready for unloading.

Later the same night, this party employed a truckman at Sioux Falls to go to Colton for the purpose of transporting these cattle to the stockyards at Sioux Falls. The truckman, with two other truck drivers and the purchaser of these cattle, drove to Colton, found the car of stock spotted at the stockyards ready for unloading. The purchaser opened the car, the cattle were unloaded into the stockyards, and thence onto the trucks, and hauled to the Sioux Falls stockyards, where they were sold. No railroad employees were present at the time of the unloading of the car or the taking of the cattle from the stockyards at Colton, S. D.

Will Buntrock of Henkin, S. D., testified on behalf of the plaintiff that he was a farmer, and that he owned the land described in the statement furnished by the purchaser of the cattle, that he was the only party of his name in that vicinity, but that he had not purchased these cattle or authorized any one to purchase them for him, and knew nothing about the transaction.

At the close of all the testimony, both parties moved for a directed verdict. Thereupon the court discharged the jury, and in due time entered judgment for the plaintiff, and defendant has appealed.

█ Both parties, having moved for a directed verdict, thereby submitted to the court all disputed questions of fact, if any, and its findings have the same force and effect as the verdict of a jury. American Surety Co. v. Republic Casualty Co. (C. C. A.) 42 F.(2d) 807; Springfield Fire & Marine Ins. Co. v. National Fire Ins. Co. (C. C. A.) 51 F.(2d) 714; Southern Surety Co. v. Fidelity & Casualty Co. (C. C. A.) 50 F.(2d) 16; Hookway v. Bank (C. C. A.) 36 F.(2d) 166. There was, however, no dispute in the evidence as to any substantial question of fact, and the question presented is whether, under the facts, the plaintiff was entitled to recover.

█ The party who purchased these cattle from plaintiff was an impostor and a swindler. Plaintiff personally negotiated the sale of these cattle to a stranger, whom he met face to face and identified as Will Buntrock. He took a property statement from him, which he verified by telephoning to the register of deeds at Madison, S. D., and thereby satisfied himself as to the identity of the party and his financial responsibility. He then sold the cattle to this impostor, taking from him his note for the purchase price and the freight charges, and taking as security the chattel mortgage which has been described. This mortgage contained various recitals, among others, that the property described was in possession of the mortgagor; that all the stock, cattle, and chattels were owned by the mortgagor, free and clear of all liens and incumbrances, and in his undisputed possession on the premises described, in Lake county, S. D.; that the mortgagor would forever warrant and defend title and possession of the cattle, stock, and chattels described, against every person whomsoever; that "said stock and cattle have been in the undisputed possession of the party of the first part (mortgagor) for the period of one day last past, having been purchased by the party of the first part from J. A. Flanders of Sioux City, Iowa."

The account sales delivered to the impostor by the plaintiff, was in the following words and figures:

"J. A. Flanders
"Live Stock Broker.
"Stock Yards, Sioux City, Ia. Feb. 17, 1930.
"Sold to Will Buntrock.

| Cattle | Weight | Price | Amount |
|--------|--------|-------|--------|
| 35 | 30900 | 11/25 | 3,476.25 |
| | Brandg. & Recodg | | 3.60 |
| | | | 3,479.85" |

The shipping order, with a copy of which impostor was also apparently furnished by the plaintiff, was dated February 17, 1930, and directed delivery to the Milwaukee Road for shipment, thirty-five steers, to be loaded from block 19, pen 42, consignor, J. A. Flanders, consignee, Will Buntrock, destination, Henkin, S. D., and signed J. A. Flanders.

It is important to determine the ownership of these cattle. It is contended by the defendant that the title vested in the impostor, and that, as the railway company made delivery to him, it could not be held liable to the plaintiff for their value. There is no doubt that this contract of sale was induced by fraud of the purchaser. The fraud consisted in representing himself to be Will Buntrock, of Henkin, S. D., and the owner of the property described by him in the property statement furnished the plaintiff. The plaintiff dealt with this impostor and sold these cattle to him. He did not discover the fraud until after the note matured, some time in May, 1930. The fraud was such as entitled plaintiff to rescind the contract of sale and recover from the impostor the possession of the cattle, or their value. The contract, however, was not void, but simply voidable. Though deceived as to the buyer's identity and responsibility, yet the plaintiff sold to this impostor, and title passed to him. Edmunds v. Merchants' Despatch Transportation Co., 135 Mass. 283; Samuel v. Cheney, 135 Mass. 278, 46 Am. Rep. 467; Phelps v. McQuade, 220 N. Y. 232, 115 N. E. 441, 442, L. R. A. 1918B, 973; Martin v. Green, 117 Me. 138, 102 A. 977, 978; Jones v. Rhoades, 167 Iowa, 562, 149 N. W. 637; Perkins v. Anderson, 65 Iowa, 398, 21 N. W. 696; The Drew (D. C.) 15 F. 826; Fulton Bag & Cotton Mills v. Hudson Navigation Co. (D. C.) 157 F. 987.

It is to be observed that plaintiff recognized the purchaser's title by taking back from him the chattel mortgage which contained the above-noted recitals, and he placed a copy of this instrument in the hands of the purchaser. He also placed in the hands of the purchaser copy of the account sales, so that the impostor not only had the legal title, but the plaintiff clothed him with the documentary insignia of ownership. Title to the cattle being in the impostor, the railroad company, having no actual knowledge of any fraud, was not only entitled but required to make delivery to him upon his demand, as the real owner of the property. He also had a right to change or divert the shipment while in transit. 10 C. J. 84; The Martha (D. C.) 35 F. 313; Ryan v. Gt. Northern Ry. Co., 90 Minn. 12, 95 N. W. 758; Houston & T. C. R. Co. v. Smith (Tex. Civ. App.) 258 S. W. 542; Wente v. Chicago, B. & Q. R. Co., 79 Neb. 179, 115 N. W. 859, 15 L. R. A. (N. S.) 756; Ocean S. S. Co. v. People's Shoe Co., 202 Ala. 594, 81 So. 241.

The railway company might, under the law, have delivered either to the lawful holder of the bill of lading, or to the real owner. Section 89, title 49, USCA. The bill of lading was a straight bill of lading, and hence it was not necessary that the railway company require the production of the bill of lading before making delivery, and it appears here that the delivery was actually made to the owner of the property. There was, therefore, no breach of duty, no breach of contract, and no actionable negligence on the part of the railway company.

In Martin v. Green, supra, decided by the Supreme Court of Maine, an impostor purchased a horse, giving notes secured by a mortgage on the horse and other alleged property. The impostor represented himself to be Frank E. Towle, a reliable and reputable horse dealer. The impostor sold the horse, and the original owner later took possession from the impostor's vendee. The vendee then brought suit against the original owner for the value of the horse. In the course of the opinion the court said:

"The primary question to be decided is whether the title to the horse passed to Roche under the transaction between Green and him. The defendant claims that the sale was absolutely void, a mere nullity; that in consequence of the deception and fraud practiced upon Green no title passed from him; that it was the same as if Roche had stolen the horse and carried him away. The plaintiff contends, on the other hand, that under the facts of this case the sale was not absolutely void, but merely voidable; that as between Green and Roche, Green could have rescinded the contract and recovered his horse, but that until that was done, the title remained in Roche, and Green could not hold the horse as against a bona fide purchaser for value from Roche. We think the plaintiff's contention is correct. * * * All the elements of a sale were present and the minds of the parties met, they agreed upon the article to be sold, and the price and terms of payment. Nor was there any doubt as to who was the vendor and who was the vendee. Green intended to sell to the identical man before him, with whom he was

dealing, whatever his name might be, and to take back a mortgage from that man. That actual intent governs. 'Præsentia corporis tollit errorem nominis.' Identification by the senses overrides description. The act followed the intent, and the horse was delivered to the intended vendee. It was what is termed a de facto contract of sale and title thereby passed, to be defeated because of fraud only as between vendor and vendee, or as between vendor and a purchaser having knowledge of the infirmity."

The case of 'Edmunds v. Merchants' Despatch Transportation Co., supra, decided by the Supreme Court of Massachusetts, bears close analogy in its facts to the instant case. In that case, as in the instant case, action was brought against the carrier to recover the value of the goods intrusted to it for transportation. The facts there under consideration are stated by the court as follows:

"In two of the cases, a swindler, representing himself to be Edward Pape of Dayton, Ohio, who is a reputable and responsible merchant, appeared personally in Boston, and bought of the plaintiffs the goods which are the subject of the suits respectively. In those cases, we think it clear, upon principle and authority, that there was a sale, and the property in the goods passed to the purchaser. The minds of the parties met and agreed upon all the terms of the sale, the thing sold, the price and time of payment, the person selling and the person buying. The fact that the seller was induced to sell by fraud of the buyer made the sale voidable, but not void. He could not have supposed that he was selling to any other person; his intention was to sell to the person present, and identified by sight and hearing; it does not defeat the sale because the buyer assumed a false name, or practiced any other deceit to induce the vendor to sell. * * *

"In the cases before us, there was a de facto contract, purporting, and by which the plaintiffs intended, to pass the property and possession of the goods to the person buying them; and we are of opinion that the property did pass to the swindler who bought the goods. The sale was voidable by the plaintiffs; but the defendant, the carrier by whom they were forwarded, had no duty to inquire into its validity. The person who bought them, and who called himself Edward Pape, owned the goods, and upon their arrival in Dayton had the right to demand them of the carrier. In delivering them to him, the carrier was guilty of no fault or negligence. It delivered them to the person who bought and owned them, who went by the name of Edward Pape, and thus answered the direction upon the packages, and who was the person to whom the plaintiffs sent them."

In Samuel v. Cheney, supra, action was brought against the carrier for the conversion of goods which had been purchased by an impostor and by the railway company delivered to him. In the course of the opinion in that case it is said:

"The contract of the carrier is not that he will ascertain who is the owner of the goods and deliver them to him, but that he will deliver the goods according to the directions. * * *

"Suppose, upon the arrival of the goods in Saratoga Springs, the impostor had appeared and claimed them; to the demand of the defendant upon him to show that he was the man to whom they were sent, he replies, 'True, there is another A. Swannick here, but he has nothing to do with this matter; I am the one who ordered and purchased the goods; here is the bill of the goods, and here is the letter notifying me of their consignment to me, addressed to me at my P. O. box 1595.' The defendant would be justified in delivering the goods to him, whether he was the owner or not, because he had ascertained that he was the person to whom the plaintiff had sent them. * * *

"The plaintiff contends that he intended to send the goods to Arthur Swannick. It is equally true that he intended to send them to the person with whom he was in correspondence. We think the more correct statement is, that he intended to send them to the man who ordered and agreed to pay for them, supposing erroneously that he was Arthur Swannick. It seems to us that the defendant [the carrier], in answer to the plaintiff's claim, may well say, we have delivered the goods entrusted to us according to your directions, to the man to whom you sent them, and who, as we were induced to believe by your acts in dealing with him, was the man to whom you intended to send them; we are guilty of no fault or negligence."

So here it seems clear that, not only did the plaintiff vest the impostor with title, but he turned over to him the documents clothing him with apparent title to the property, by means of which he induced the railway company to make delivery. Under such circumstances, as to the railway company at least, the plaintiff should be estopped to deny that

the impostor was the owner and entitled to the possession of the cattle.

The New York Court of Appeals in Phelps v. McQuade, supra, following the Massachusetts cases, said: "Where the transaction is a personal one, the seller intends to transfer title to a person of credit, and he supposes the one standing before him to be that person. He is deceived. But in spite of that fact his primary intention is to sell his goods to the person with whom he negotiates."

Answering the contention that the contract under consideration was void because induced by fraud, the Supreme Court of Iowa in Jones v. Rhoades, supra, said: "If the property was obtained by fraud (that is, if the sale was made because of false representations by the plaintiff), it would be voidable, but is binding until plaintiff takes some steps to disaffirm or rescind the contract."

We have already observed that the railway company was entitled to deliver either to the actual owner of the property or to the lawful holder of the bill of lading. It has been suggested that the plaintiff was the lawful holder of the bill of lading, but it appears from the evidence that he did not have possession of the bill of lading or shipping contract until June or July, 1930, so that at no time during which the railway company had possession of this property did the plaintiff even have possession of the bill of lading. In any event, the mere possession of the bill of lading, which on its face showed that plaintiff was not the consignee, would not have entitled him to delivery of the property. Had he wished to hold the railway company for delivery, he might have named himself as consignee, but this he failed to do. It is also noted that it appears from the bill of lading that it was issued in triplicate, one copy placed on file as part of the station records. Apparently, it was the copy placed on file as a part of the station records which, in June or July, 1930, was delivered to the plaintiff. In the absence of evidence, the burden of proof being on plaintiff, we should presume that one of the copies of the contract was delivered to the impostor. Plaintiff, therefore, was not entitled to a delivery of the property to himself.

Will Buntrock, of Henkin, S. D., was not the owner of the cattle; neither was he the holder of the bill of lading. He, in fact, was an entire stranger to the whole transaction, so that the railway company could not lawfully have made delivery to him. In the final analysis, it was plaintiff's mistake as to the identity of the party with whom he was dealing which led to his loss of the cattle. It cannot be said that the railway company made any mistake or that it was negligent in handling the shipment. The maxim that, "Where one of two innocent persons must suffer by the act of the third, he by whose negligence it happens must be the sufferer," is well grounded on the principles of natural justice. The swindler perpetrated a fraud upon the plaintiff, and not upon the railway company. This misfortune was one of the hazards of plaintiff's business, and not one of the hazards of the railway company's business.

The judgment is therefore reversed, and the cause remanded for further proceedings consistent herewith.