BANKERS' COMMERCIAL SECURITY Co., INC., Plaintiff, *v.* PIERCY CORPORATION OF AMERICA and Others, Defendants.

Supreme Court, Madison County, October 31, 1932.

*J. A. Johnson,* for the plaintiff.

*Ralph W. France,* for defendant Snyder.

SENN, Official Referee. The plaintiff is a banking corporation doing business at 270 Madison avenue, New York.

The Piercy Corporation of America is named as a defendant, but was not served.

About May 8, 1929, the defendant Snyder, a resident of Hamilton,

N. Y., was interviewed by a representative of the Piercy Corporation, and induced to enter into a contract for the sale and distribution by him, within the county of Madison, of a product known as Piercy's Live Stock Food Digester. He was to receive from the Piercy Corporation and pay for digesters amounting to $2,511, the same to be shipped to him thereafter. He paid $325 down, and gave his note of $2,186 for the remainder, payable at the National Hamilton Bank, to the order of the Piercy Corporation of America, six months after date.

No digesters were ever shipped to Snyder, and nothing was ever received by him for his money or his note.

The agent of the Piercy Corporation agreed, and it was understood at the time the note was given, that it would not be cashed or used as collateral, but would simply be held to show that they, the Piercy Corporation, had an interest in the digesters.

On or about September 4, 1929, in violation of its agreement with Snyder, the Piercy Corporation presented the note to the plaintiff for discount.

According to the testimony of Mr. R. C. Bryan, a representative of the plaintiff and the only witness sworn in its behalf, the plaintiff purchased this note and nine others, the ten having a total face value of $24,299, of the Piercy Corporation for the sum of $10,300, it being handled as one transaction.

The other notes were given to the same Piercy Corporation by persons residing over a wide area, as Mr. Bryan understood it, and were probably distributor's notes of the same general character as the Snyder note; that is to say, notes by purchasers of digesters.

Mr. Bryan did not personally handle the transaction, and it does not appear who personally took the notes in for the bank nor who personally presented them for discount. His testimony in regard to the indorsement of the Snyder note by L. H. Piercy, president, for the corporation, was unsatisfactory, in that he had never seen Mr. Piercy write, and only knew that the signature compared to his signature on the other nine notes, none of which he saw him write. However, the possession and production of the notes by the plaintiff is no doubt sufficient to cover that point. (*Trop* v. *Gramercy Chocolate Co.*, 187 App. Div. 523.) The circumstances in *Hoberg* v. *Sofranscy* (248 N. Y. 141, 144), cited by defendant's counsel, were different, and I prefer to base my decision on the merits rather than the technical point that the indorsement by the Piercy Corporation was not satisfactorily proven.

Plaintiff brings this action against the defendant Snyder claiming to be a holder of the note in due course and for value. What constitutes such a holder is too familiar to require the citation of

cases or statutes. In such an action the plaintiff, of course, has the burden of proof, but ordinarily that burden is met by proof of the simple facts as set forth in section 91 of the Negotiable Instruments Law, after which the burden is on the defendant to show that the plaintiff is not a holder in due course, if he claims such to be the fact. But, when the title of the one who negotiates the note is defective for any of the reasons set forth in section 94 of the Negotiable Instruments Law, as when it was procured by fraud or when it is negotiated in breach of faith, a somewhat different rule prevails.

As stated by Judge RUGER in *Canajoharie National Bank* v. *Diefendorf* (123 N. Y. 191, at pp. 202, 206): " The fact that they took the paper before maturity, and paid the full value thereof, in the absence of other facts, undoubtedly affords a presumption of the good faith of the transaction. But where it further appears that such property has been fraudulently or illegally obtained * * * and under such circumstances that the person putting it in circulation could not maintain an action thereon, it is incumbent upon the holder in order to succeed to go farther and show the circumstances under which it came into his possession, and that he has acted in good faith in the transaction. * * * Such a party makes out his title by presumptions, until it is impeached by evidence showing the paper had a fraudulent inception, and when this is done the plaintiff can no longer rest upon the presumptions, but must show affirmatively his good faith."

He must show the circumstances under which he acquired the paper " with the view of enabling the jury to determine whether he acted in good faith or not." (Id. p. 206.)

The doctrine is so fully discussed in Judge RUGER's opinion as to make further elaboration unnecessary. The reason of the rule is obvious.

" It is well settled that if a note has been diverted or negotiated in violation of an agreement under which it was given, such negotiation constitutes a breach of faith, amounts to a fraud upon the maker, and when that fact appears the holder cannot recover upon it against the maker without showing that he received it in the ordinary course of trade for a valuable consideration and without knowledge of such agreement." (*German-American Bank of Rochester* v. *Cunningham,* 97 App. Div. 244, 247, citing *American Exchange Nat. Bank* v. *New York Belting & Packing Co.,* 148 N. Y. 698; also citing *Canajoharie National Bank* v. *Diefendorf, supra.*)

The same doctrine was held in *Walkof* v. *Strober* (200 App. Div. 104), a case in which the facts were very similar to the one at bar.

Where the circumstances are peculiar, the jury are at liberty to

look between the lines and determine whether the note was received in good faith. (*McCammon* v. *Shantz*, 49 App. Div. 460.)

There are many other authorities uniformly to the same effect.

In the case at bar there was no opportunity to hear and see any of the persons who handled the transaction when the ten notes were discounted and no opportunity to cross-examine them, a privilege which surely should not have been withheld from one so grievously defrauded as was the defendant Snyder. On those grounds alone the plaintiff has not met the burden of proof requirements of the law, and should fail.

Besides, there are circumstances which should have invited inquiry by the plaintiff before cashing the ten notes. The makers must have been strangers to the plaintiff bank, and the person at the desk would naturally wonder where the Piercy Corporation, offering them at so great a discount, obtained them. If the Piercy Corporation was sound financially, they would be able to obtain a larger sum than they did. If not clearly solvent, the bank would hardly have advanced as much as it did on notes made by up-state strangers.

It is true that the fact that one has purchased an obligation for less than its face value does not necessarily preclude him from being a holder in due course, but the large discount is a matter which can properly be taken into consideration in determining the good faith of the transaction. (*Vosburgh* v. *Diefendorf*, 119 N. Y. 357, 365.)

Where the maker of a note is of unquestioned financial responsibility, the discount of the note less than six weeks before its maturity for a little more than one-half of its face value requires the submission of the question of good faith to the jury. (*Becker* v. *Hart*, 135 App. Div. 785.)

In the case at bar the notes were discounted for nearly $4,000 less than their face value.

As the case thus stands, I hold that the plaintiff has failed to prove or to satisfy me of its good faith in the transaction.

Plaintiff's action was brought on the theory that it was an ordinary banking transaction in which the bank had become the owner of the note in suit by discounting it. Mr. Bryan testified that the bank purchased the notes. However, his information was all derived from the records of the bank. A sheet from a loose-leaf binder of the corporation record was introduced in evidence. From this it appeared that the bank had on September 4, 1929, discounted a note of $10,300 of the Piercy Livestock Foods Corporation, payable at plaintiff's office three months from date, giving plaintiff's check of $10,016.75 to the L. H. Piercy Company and taking the ten notes in question as collateral. The check was cashed, I suppose, by the defendant Piercy Corporation of America, although the indorse-

ments were "The L. H. Piercy Co., L. H. Piercy, Pres.," and "Piercy's Life Stock Foods Corp., L. H. Piercy, Pres."

Whether the variance in names was due to clerical error and all referred to the Piercy Corporation of America, or whether there were several corporations using the word or name "Piercy" as a part of their corporate name, does not appear. Be that as it may, the taking of the ten notes as collateral does not, in my opinion, lessen the obligation of the plaintiff to prove itself a holder in due course nor change the rule as to the burden of proof. If the notes are collateral only, the criticism as to the small amount advanced on them would not apply, but the plaintiff would have no greater interest in them than the debt they were taken to secure, because ordinarily the payment of an indebtedness releases the collateral. (*Jackson* v. *Erkins*, 131 App. Div. 801.)

In the present case there was no proof as to whether the Piercy note of $10,300 or any part of it had been paid, nor whether any attempt had been made to collect it, nor whether anything had been collected on any of the other nine notes. However that may be, the plaintiff has not met the necessary requirements of proof, and the complaint must be dismissed, with costs. Submit findings accordingly.